UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. _____

RAQUEL COLON,

    Plaintiff,

v.

MAGICAL CRUISE COMPANY, LIMITED
d/b/a Disney Cruise Line,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff sues MAGICAL CRUISE COMPANY, LIMITED d/b/a Disney Cruise Line and alleges:

### PRELIMINARY ALLEGATIONS

1. The Plaintiff, RAQUEL COLON, is a citizen of Texas.

2. Defendant, MAGICAL CRUISE COMPANY, LIMITED d/b/a Disney Cruise Line (hereinafter "DISNEY") is a foreign corporation incorporated in London, England which has its worldwide headquarters and principal place of business in Celebration, Florida.

3. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332. As such, this matter falls under the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Further, this matter is being filed in the United States District Court for the Middle District of Florida, as required by the

forum selection clause contained within the Cruise Ticket Contract issued by Defendant.

4. At all times material hereto, Defendant, personally or through an agent:

   a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b. Was engaged in substantial activity within this state;

   c. Operated vessels in the waters of this state;

   d. Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 or 48.193;

   e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state; and/or

   f. Issued a cruise line ticket to the Plaintiff that requires that suit be brought in this Court against the named Defendant in this action.

5. Defendant is subject to the jurisdiction of the courts of this state.

6. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

## FACTS COMMON TO ALL COUNTS

7. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the subject vessel, *Disney Wonder*.

8. At all times material hereto, Defendant had exclusive custody and control of the *Disney Wonder*.

9. On or about May 7, 2024, the Plaintiff was a paying passenger aboard the *Disney Wonder*, which at all times material was in navigable waters.

10. At all times material hereto, Defendant designed and controlled its own mandatory excursion disembarkation process for passengers. Defendant was responsible for overseeing the operations of the excursion disembarkations and its crew including, but not limited to, safety, staffing, training, guidance, and instruction thereof.

11. On or about May 7, 2024, while aboard the *Disney Wonder*, the Plaintiff was required to meet with a large group of passengers at a theater on Deck 4 before disembarking for an excursion.

12. Once the Plaintiff and other passengers arrived at the theater, which was dimly lit, Defendant's crew instructed passengers, including the Plaintiff, to gather in large, overcrowded groups around the stage. As a result, the Plaintiff did not have a visual of the flooring surface nor any changes in elevation when she tripped and fell over an inconspicuous step near the stage.

13. The Plaintiff sustained severe injuries including, but not limited to, a shoulder fracture and torn rotator cuff.

14. The subject step and tripping hazard was not open and obvious. The Plaintiff had no way of knowing the existence of the tripping hazard and/or unsafe flooring condition. In light of the poor lighting and large crowd gathered inside the theater, the Plaintiff was unable to observe the step before her fall. As such, the Plaintiff was unable to prevent her incident.

15. Defendant created the dangerous condition and had actual and/or constructive knowledge of the dangerous conditions because Defendant's crew

actively instructed the Plaintiff through the mandatory disembarkation process without regard for passenger safety nor the large number of passengers gathering simultaneously.

16. Prior to the subject incident, Defendant planned out its mandatory disembarkation process while knowing the number of passengers who would be present for disembarkation and as such Defendant knew and/or should have known that the number of passengers being required to disembark while gathered in a dimly lit theater with a tripping hazard was dangerous and/or could cause injury to passengers.

17. Defendant's knowledge of the dangerous condition(s) was specifically acquired through (a) its cleaning and inspection of the subject area prior to this incident, and/or through (b) prior incidents causing personal injury to Defendant's passengers involving the same or similar tripping hazard aboard its vessels, including the subject vessel. Additionally, the foregoing hazardous conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and warned about them.

## **COUNT I – NEGLIGENT FAILURE TO WARN**

Plaintiff re-alleges, adopts and incorporates by reference the allegations in paragraphs one (1) through seventeen (17) as though alleged originally herein.

18. At all times material hereto, it was the non-delegable duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

19. At all times material hereto, it was the non-delegable duty of Defendant to warn passengers (like Plaintiff) of dangers that were known, or reasonably should have been known, to Defendant in places where passengers (like Plaintiff) are reasonably expected to be.

20. On or about May 7, 2024, Plaintiff was on Deck 4, which is a place that Defendant reasonably expected Plaintiff to be in during the cruise.

21. On or about May 7, 2024, Defendant through its crew, agents, employees, staff or representatives breached its duty to warn Plaintiff in one or more of the following ways:

   a. Failure to warn of the tripping hazard and change in elevation in the subject area;

   b. Failure to verbally warn and/or place warning signs on or around the tripping hazard or flooring surface in the subject area;

   c. Failure to block off or place a caution sign so as to warn passengers including Plaintiff of the tripping hazard in the subject area;

   d. Failure to warn passengers, including the Plaintiff, of the dangerous condition;

   e. Failure to warn the Plaintiff that there would be inadequate space for passengers to gather;

   f. Failure to warn the Plaintiff that there would be an insufficient amount of crew monitoring, supervising, and/or facilitating the disembarkation process; and/or

   g. Failure to warn of other accidents previously occurring involving tripping hazards in the same and similar circumstances.

22. The above acts and/or omissions caused or contributed to the Plaintiff being severely injured because Plaintiff would not have been injured had

Defendant adequately warned the foregoing to the Plaintiff.

23. At all times material hereto, Defendant knew of the foregoing conditions causing the Plaintiff's accident and did not warn about them.

24. As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against Defendant.

### COUNT II – NEGLIGENCE AGAINST DEFENDANT FOR THE ACTS OF ITS CREW BASED ON A THEORY OF VICARIOUS IABILITY UNDER *RESPONDEAT SUPERIOR*

Plaintiff re-alleges, adopts and incorporates by reference the allegations in paragraphs one (1) through seventeen (17) as though alleged originally herein.

25. At all times material hereto, Defendant owned, operated, controlled and/or maintained the *Disney Wonder*, and was responsible for overseeing the operations of the excursion disembarkations and its crew including, but not limited to, safety, staffing, training, guidance, and instruction thereof.

26. At all times material, the crew that instructed the Plaintiff was on duty working aboard the vessel *Disney Wonder*.

27. At all times material hereto, crew was acting within the scope of their employment or agency.

28. At all times material, the crewmember was an agent, servant and/or employee of Defendant which was therefore vicariously liable for the negligent treatment of Plaintiff under the legal principles of *respondeat superior*.

29. At all times material, Defendant acknowledged that the crewmember would act on Defendant's behalf based on the following:

   a. The crewmember worked onboard the vessel which was owned and/or operated by Defendant;

   b. The crewmember was employed full-time by Defendant;

   c. The crewmember was paid a salary by Defendant;

   d. The crewmember wore uniforms and/or nametags, which were provided by Defendant and had Defendant's name and logo;

   e. The crewmember was under the commands of the ship's officers and followed all of the master's rules and regulations; and

   f. The crewmember spoke to Plaintiff as though he/she had authority to do so by Defendant.

30. At all times material, crew were subject to the control and/or right to control by Defendant, based on the allegations set forth in the preceding paragraph, along with the following:

  a. The crew was employed full-time by Defendant, paid a salary by Defendant, and worked on the vessel owned and/or operated by Defendant;

  b. Defendant operated and determined the manner in which disembarkations for excursion groups are performed by crew with instruction furnished by Defendant;

  c. The crew was subject to Defendant's training requirements and were under the commands of Defendant's ship's officers and the master's rules and regulations;

  d. Defendant had the right to fire the crew;

  e. Defendant established and enforced the terms of employment for its crew including their job duties and the details of their work; and

  f. Defendant supplied the mechanisms, workplace and equipment for said personnel to perform their job duties.

31. At all times material, Defendant acknowledged that the crew would act on Defendant's behalf, and the crewmember accepted the undertaking.

32. At all times material, Defendant had a duty to provide the Plaintiff with reasonable care under the circumstances.

33. At all times material, the crewmember owed a duty to provide the Plaintiff with reasonable care under the circumstances.

34.     Defendant is vicariously liable under the principles of *respondeat superior,* for the acts and omissions of its employees, servants, agents, ostensible

agents, and/or representatives, including but not limited to its staff and crew, and breached its duty to exercise reasonable care under the circumstances owed to the Plaintiff as follows:

   a. Failure to warn passengers including Plaintiff of the tripping hazard;

   b. Failing to gather Plaintiff's debarkation group with adequate spacing among passengers to avoid overcrowding;

   c. Failing to instruct the passengers in Plaintiff's disembarkation group to walk slowly, carefully, and to not crowd or push other passengers;

   d. Failing to maintain a reasonable distance between the stage and the passengers;

   e. Failing to maintain a reasonable distance between the passengers and the subject step;

   f. Failing to ensure the passengers including the Plaintiff had adequate walking space in the subject area at the time of the incident;

   g. Failing to ensure the subject area had adequate lighting at the time of the subject incident; and/or

   h. Failing to ensure the subject area would not become overcrowded at the time of the subject incident.

35. The above acts and/or omissions caused and/or contributed to the Plaintiff being injured because Plaintiff would not have used the subject area had Defendant and/or its agents, servants and/or employees adequately warned and/or communicated the foregoing to the Plaintiff.

36. As Plaintiff's negligence claims proceed under a theory of vicarious liability, she is not required to plead notice. *See, Elardi v. Royal Caribbean Cruises, Ltd.*, No. 19-CV-25035, 2021 WL 7367291 (S.D. Fla. Dec. 2, 2021) ("…the notice requirement does not—and was never meant to—apply to maritime negligence claims proceeding under a theory of vicarious liability.") (citing *Yusko v. NCL (Bahamas) Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021).

37. As a direct and proximate result of the negligence of Defendant and Defendant's crewmember, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and Plaintiff's working ability has been impaired. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs. Further, the injuries resulting from her incident are permanent or continuing in nature and Plaintiff will suffer these losses and impairments into the future.

WHEREFORE, the Plaintiff demands judgment for all damages recoverable under the law against Defendant and demands trial by jury.

**COUNT III – GENERAL NEGLIGENCE AGAINST DEFENDANT**

Plaintiff re-alleges, adopts and incorporates by reference the allegations in paragraphs one (1) through seventeen (17) as though alleged originally herein.

38. At all times material hereto, it was the non-delegable duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

39. At all times material, Defendant through its crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with the Defendant, breached the duty of care owed to the Plaintiff and were negligent in one or more of the following ways:

   a. Failure to identify and remove the tripping hazard in the subject area;

   b. Failure to provide passengers, including Plaintiff, with a reasonably safe area to walk in the subject area;

   c. Failure to provide proper and/or sufficient instructions to passengers so that passengers, including Plaintiff, had a reasonably safe area to walk in the subject area;

   d. Failure to provide proper and/or sufficient warnings to passengers, including Plaintiff, of the tripping hazard in the subject area;

   e. Failing to provide passengers with adequate spacing to avoid overcrowding in the subject area;

   f. Failing to ensure passengers maintained a reasonable distance between themselves and the stage;

   g. Failing to ensure passengers maintained a reasonable distance between themselves and the subject step;

   h. Failing to provide adequate lighting in subject area at the time of the incident;

    i. Failing to ensure the subject area would not become overcrowded at the time of the subject incident;

    j. Failure to promulgate and/or enforce adequate policies and procedures to ensure that debarkation is conducted in a reasonably safe manner so as to eliminate, modify and/or remedy the hazard(s) which caused Plaintiff's incident;

    k. Failing to provide passengers with a reasonably safe alternative method of disembarking the vessel for excursions; and/or

    l. Failure to ascertain the cause of prior similar accidents happening on any of the Defendant's vessels fleet so as to take adequate measures to prevent their reoccurrence, and more particularly Plaintiff's accident.

40. Prior to and/or during Plaintiff's incident, Defendant had knowledge of the dangerous conditions identified above because Defendant planned out its mandatory disembarkation process while knowing the number of passengers who would be present for disembarkation and, as such, knew and/or should have known that the number of passengers being required to gather in a dimly lit theater with a tripping hazard was dangerous and/or could cause injury to passengers.

41. Additionally, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of and corrected them. *See, Joseph v. Royal Caribbean Cruise Lines, Ltd.*, Case No. 24-cv-21592-AHS (S.D. Fla 2024) (On April 28, 2023, a

passenger was injured when crewmembers allowed the dance floor to become overcrowded with other passengers thereby causing the plaintiff's injuries).

42.  As a direct and proximate result of the negligence of Defendant, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, suffered physical handicap, lost wages and Plaintiff's working ability has been impaired. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs. Further, the injuries resulting from her incident are permanent or continuing in nature and Plaintiff will suffer these losses and impairments into the future.

WHEREFORE, the Plaintiff demands judgment for all damages recoverable under the law against Defendant and demands trial by jury.

Dated: April 25, 2025.

Respectfully submitted,

LIPCON, MARGULIES
& WINKLEMAN, P.A.
*Attorneys for Plaintiff*
2800 Ponce de Leon Blvd, Suite 1480
Coral Gables, Florida 33134
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By: */s/ Stefanie A. Black*
**STEFANIE A. BLACK**
Florida Bar No. 111903
sblack@lipcon.com